**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| REBECCA OGLEVEE, on behalf of herself and all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>GENERALI US BRANCH, and GENERALI GLOBAL ASSISTANCE, INC. d/b/a/ CSA TRAVEL PROTECTION,<br><br>　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)　Case No. 2:20-cv-1277<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**CLASS ACTION COMPLAINT**

　　　　Plaintiff, Rebecca Oglevee ("Plaintiff"), brings this Class Action Complaint individually, and on behalf of all others similarly situated, against Defendants, Generali US Branch ("Generali") and Generali Global Assistance, Inc., d/b/a/ CSA Travel Protection ("CSA" or collectively with Generali, "Defendants"), and alleges as follows based upon information and belief, except as to the allegations specifically pertaining to her, which are based on personal knowledge.

**NATURE OF THE ACTION**

　　　　1.　　This is a class action lawsuit on behalf of all persons who paid for and/or obtained a travel protection insurance policy from Defendants, and who had their claim for travel reimbursements due to Covid-19 related cancellations, delays, or interruptions denied.

　　　　2.　　On or about July 2, 2019, Plaintiff booked travel to Key West, Florida, including a seven (7) night stay at a rental home scheduled to begin on March 17, 2020, and end on March 24, 2020 (the "Trip"). At or around that same time, Plaintiff applied for and was issued a travel

1

protection insurance policy, pursuant to which Defendants agreed to, among other things, reimburse Plaintiff for costs associated with the cancellation or delay of the Trip.

3. Covid-19 and governmental orders and guidance issued in connection therewith forced Plaintiff to cancel her Trip.

4. As a result of that cancellation, Plaintiff incurred certain costs including all payments made for the Trip for which she made a claim under the policy.

5. In defiance of the plain terms and conditions of the policy, Defendants have failed and refused to honor their contractual obligations to reimburse Plaintiff for the costs incurred due to the cancellation of Plaintiff's Trip.

6. Upon information and belief, Defendants have – on a uniform basis – failed and refused to reimburse their insureds under the policies for forfeited, prepaid, non-refundable, non-refunded, and unused payments incurred as a result of the cancellation and/or delay of trips due to Covid-19 and/or associated governmental orders.

7. The Plaintiff and members of the Class are entitled to reimbursements as contracted for under the policies.

## PARTIES

8. Plaintiff, Rebecca Oglevee, is an adult individual and citizen of the Commonwealth of Pennsylvania, residing in Allegheny County.

9. Defendant Generali is an insurance company with its principal place of business at 250 Greenwich Street, 33rd Floor, New York, New York 10007, and is a citizen of the State of New York. Generali is admitted or licensed to do business in all fifty (50) states and the District of Columbia.

10. Defendant CSA provides insurance services and handles claims made under

Generali's policies. CSA maintains its principal place of business at 4330 East-West Highway, Suite 1000, Bethesda, Maryland 20814, and is a citizen of the State of Maryland.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because Plaintiff and at least one member of the Class, as defined below, is a citizen of a different state than Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

12. This Court has personal jurisdiction over Defendants because at all relevant times they have engaged in substantial business activities, including the sale of policies, in Pennsylvania. Defendants have, at all relevant times, transacted, solicited, and conducted business in Pennsylvania through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in Pennsylvania.

13. Pursuant to 28 U.S.C. § 1391(a)(2), venue is proper in this District because Plaintiff's policy was purchased in this District, and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District.

## FACTUAL BACKGROUND

*The Travel Insurance Policy*

14. On or about July 2, 2019, Plaintiff made travel accommodations including the purchase of a seven (7) night stay at a rental home in Key West, Florida, which was scheduled to begin on March 17, 2020, and end on March 24, 2020. The rental home for the Trip was prepaid at a cost of $3,000.00.

15. At or about that same time, Plaintiff applied for and obtained a travel protection insurance policy, policy number 19183W6934 administered by CSA, and underwritten by Generali, to insure her Trip. The Description of Coverage/Policy (the "Policy") is attached hereto as **Exhibit A**.

16. The Policy sets forth coverage for Trip Cancellation and provides, in relevant part, as follows:

> Benefits will be paid, up to the amount in the Schedule, for the forfeited, prepaid, non-refundable, non-refunded, and unused published Payments that you paid for your Trip, if you are prevented from taking your Trip due to one of the following unforeseeable Covered Events that occur before departure on your Trip to you or your Traveling Companion, while your coverage is in effect under this Policy.

17. The Policy provides a list of Covered Events, one of which is for being "Quarantined."

18. The Policy defines the word "Quarantine" as the "enforced isolation of you or your Traveling Companion, for the purpose of preventing the spread of illness, disease or pests."

19. The Policy does not define "enforced isolation." Without a provided definition, "enforced isolation" may reasonably be interpreted as self-enforced or enforced by a third party.

20. The Trip Delay benefit in the Policy is described as follows:

> If you are delayed on your Trip for 12 hours or more, we will reimburse you, up to the amount shown in the Schedule for reasonable additional expenses incurred by you for lodging Accommodations, meals, telephone calls, local transportation, and additional vehicle parking charges and additional pet kennel fees incurred due to the delay.

21. The Policy provides a list of events that cause or result in the Trip Delay. On that list of events is, among other things, "Quarantine," and "natural disaster."

22. The Policy does not define "natural disaster." Without a provided definition, "natural disaster" may reasonably mean a declared federal disaster and/or national emergency, such as Covid-19.

23. The Maximum Benefit Amount under the Policy on the Schedule of Benefits is as follows:

| Coverage | Maximum Limit Per Person | Maximum Limit Per Plan |
|---|---|---|
| Trip Cancellation | 100% of Trip Cost Insured | |
| Trip Interruption | 150% of Trip Cost Insured | |
| Travel Delay ($100 Per Person Daily Limit Applies) | $500 | $5,000 |
| Baggage Coverage | $500 | $5,000 |
| Baggage Delay | $200 | $2,000 |
| Accidental Death and Dismemberment - Air Flight Accident | $25,000 | $50,000 |

24. Upon information and belief, the policies issued by Defendants are uniform in their terms and coverage.

*Covid-19 and Related Governmental Orders*

25. Covid-19 is a highly contagious, naturally occurring, airborne virus,[1] which rapidly spread and continues to spread across the United States. The virus has been declared a pandemic by the World Health Organization ("WHO").

26. Covid-19 is a public health crisis that has profoundly affected all aspects of society, prompting various federal agencies and governmental authorities to issue orders and guidance designed to slow the pace at which the virus is transmitted.

---

[1] https://www.sciencedaily.com/releases/2020/03/200317175442.htm

27. On January 30, 2020, the WHO declared Covid-19 a Global Health Emergency.[2]

28. On February 29, 2020, the first death of Covid-19 was reported in the United States.[3]

29. In the midst of the emerging crisis, The Honorable Tom Wolf, Governor of the Commonwealth of Pennsylvania, issued a series of Orders relating to the Covid-19 pandemic.

30. On March 6, 2020, Governor Wolf issued a Proclamation of Disaster Emergency (the "Proclamation"), stating that "pursuant to the provisions of Subsection 7301(c) of the Emergency Management Services Code, 35 Pa. C.S. § 7101, et seq., I do hereby proclaim the existence of a **disaster emergency** throughout the Commonwealth." (emphasis added).[4]

31. On March 11, 2020, WHO announced that Covid-19 was categorized as a pandemic.[5]

32. Also on March 11, 2020, the Public Health Information Officer for Allegheny County, Ryan Scarpino, released guidance and recommendations to, *inter alia*, "[a]void large events and mass gathering, as well as other settings where you would have close contact (within six feet) with a large group of people."[6]

33. On March 13, 2020, President Donald Trump declared the Covid-19 virus a National Emergency, which began on March 1, 2020.[7]

---

[2] https://www.statnews.com/2020/01/30/who-declares-coronavirus-outbreak-a-global-health-emergency/
[3] https://abcnews.go.com/US/high-school-student-washington-latest-coronavirus-community-spread/story?id=69301655
[4] Governor Wolf, "Proclamation of Disaster Emergency," (Mar. 6, 2020), https://www.governor.pa.gov/wp-content/uploads/2020/03/20200306-COVID19-Digital-Proclamation.pdf.
[5] https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020
[6] https://www.alleghenycounty.us/Health-Department/Resources/COVID-19/Stay-Updated.aspx
[7] https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/

34. Also on March 13, 2020, Public Health Information Officer Scarpino released further guidance to avoid travel for recreational activities.[8]

35. On March 15, 2020, the Centers for Disease Control and Prevention ("CDC") advised that there should not be gatherings of 50 or more people in order to slow the spread of Covid-19.[9] The following day, President Trump advised that there should not be gatherings of 10 or more people.[10]

36. The Proclamation, national emergency declaration, and guidance subject Pennsylvania citizens to a "quarantine" within the meaning of the Policy and of the everyday use of the word.

37. Other states have issued similar Proclamations and guidance related to the Covid-19 pandemic and are operating under a national emergency.

38. Further, all states and territories of the United States, including Pennsylvania and Florida, have been approved for "major disaster declarations" by President Trump.[11] The disaster declarations and the global impact of Covid-19 amount to a "natural disaster" under the Policy.

*Plaintiff's Claim for Benefits Under the Policy Were Wrongly Denied*

39. Plaintiff planned for and paid for her Trip and Policy prior to the aforementioned Proclamation and guidance being in effect.

40. In response to safety concerns and governmental orders regarding Covid-19, on or about March 14, 2020, Plaintiff cancelled her Trip.

---

[8] https://www.alleghenycounty.us/Health-Department/Resources/COVID-19/Stay-Updated.aspx
[9] https://www.nytimes.com/article/coronavirus-timeline.html
[10] *Id.*
[11] https://www.fema.gov/disasters/coronavirus/disaster-declarations

7

41. Plaintiff's Trip was for recreational purposes and was not essential or otherwise necessary.

42. Plaintiff's Trip was cancelled due to being in quarantine within the meaning of the Policy and everyday use of the word, and as a result of the Covid-19 natural disaster.

43. As a result of such cancellation, Plaintiff incurred losses in the form of forfeited, prepaid, non-refundable, non-refunded, and unused payments.

44. In accordance with the terms and conditions of the Policy, Plaintiff submitted claim number 154669421 on or about March 15, 2020 (the "Claim"), to Defendant seeking reimbursement for forfeited, prepaid, non-refundable, non-refunded, and unused payments.

45. On or about March 24, 2020, CSA denied the Claim, stating "your trip was cancelled due to the Corona Virus [(sic)]." Further, CSA states "since your cancellation was not due to a covered event, we are unable to provide any benefits for your claim." The denial letter is attached hereto as **Exhibit B**.

46. In tacit acknowledgment that Plaintiff is owed some refund, CSA issued Plaintiff a voucher in the amount of the premium paid for the Policy.

## CLASS ALLEGATIONS

47. Plaintiff brings this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined as:

> All persons who paid for and/or obtained a travel protection policy from Defendants, and whose claims for reimbursement were denied by or on behalf of Defendants after their trips were cancelled due to Covid-19, or Covid-19-related government proclamations, orders, and/or guidance (the "Class").

48. Excluded from the Class are Defendants, their subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which Defendants have a controlling interest, the legal representative, heirs, successors, or assigns of any such

excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

49. Plaintiff reserves the right to modify or amend the definition of the proposed Class if necessary before this Court determines whether certification is appropriate.

50. The requirements of Rule 23(a)(1) are satisfied. The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court. The exact size of the class and the identities of the individual members thereof are ascertainable through Defendants' records, including but not limited to, the sales and transaction records that Defendants have access to and/or own.

51. The requirements of Rule 23(a)(2) are satisfied. There is a well-defined community of interest and there are common questions of fact and law affecting members of the Class. The questions of fact and law common to the Class predominate over questions which may affect individual members and include the following:

    a. Whether such governmental orders, proclamations, guidance, and/or self-enforced isolation constitute – either individually or collectively – a "Quarantine" within the meaning of Defendants' policies;

    b. Whether the Covid-19 pandemic, disaster declarations, governmental orders, proclamations, and/or guidance, constitute – either individually or collectively – a "natural disaster" within the meaning of Defendants' policies;

    c. Whether Defendants' denials of the claims submitted by Plaintiff and the members of the Class were premeditated and the product of a coordinated effort to (i) dissuade Plaintiff and the other members of the Class from submitting and/or pursuing

claims under their Policies and/or (ii) to limit Defendants' losses arising from such claims; and

   d. Whether Plaintiff and members of the Class are entitled to damages, punitive damages, costs and/or attorneys' fees for Defendants' acts and conduct.

52. The requirements of Rule 23(a)(3) are satisfied. Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same failure by Defendants to provide coverage under the policies.

53. Plaintiff and members of the Class were each customers of Defendants, each having applied for and purchased a travel insurance policy that is substantially identical in all material respects from Defendants. Each likewise submitted a claim under their policies, and each such claim was denied on the basis that the claims were not covered under the policies.

54. The requirements of Rule 23(a)(4) are satisfied. Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiff and the Class members are substantially identical as explained above. While the aggregate damages that may be awarded to the members of the Class are likely to be substantial, the damages suffered by the individual members of the Class are relatively small. As a result, the expense and burden of individual litigation make it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Certifying the case as a Class will centralize these substantially identical

claims in a single proceeding, which is the most manageable litigation method available to Plaintiff and the Class and will conserve the resources of the parties and the court system, while protecting the rights of each member of the Class. Defendants' uniform conduct is generally applicable to the Class as a whole, making relief appropriate with respect to each Class member.

## FIRST CLAIM FOR RELIEF

### DECLARATORY RELIEF
**(On Behalf of Plaintiff and Members of the Class)**

55. Plaintiff incorporates by reference Paragraphs 1 through 54 hereof, as though the same were set forth in their entirety.

56. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201, in which Plaintiff and members of the Class seek a judicial determination of an actual controversy regarding coverage for their forfeited, prepaid, non-refundable, non-refunded, and unused payments caused by a cancellation, delay or interruption of their trips due to Covid-19.

57. The term "Quarantine" is used throughout the Policy and is defined using the phrase "enforced isolation." Enforced isolation is not defined within the Policy. As such, it must be given its ordinary and plain meaning as informed by, *inter alia*, its dictionary definition and the intent of the parties, as well as the custom in the industry or usage in the trade.

58. Quarantine by enforced isolation may be reasonably interpreted to mean when an individual wishes to self-isolate in order to prevent contracting or spreading a virus during a national emergency.

59. The phrase "natural disaster" is used throughout the Policy. "Natural disaster" is not defined within the Policy. As such, it must be given its ordinary and plain meaning as informed by, *inter alia*, its dictionary definition and the intent of the parties, as well as the custom in the industry or usage in the trade.

11

60. Based on the relevant Policy language and the facts, Plaintiff's and Class members' losses of forfeited, prepaid, non-refundable, non-refunded, and unused payments arise from a "Quarantine" and "natural disaster" within the meaning of the policies, and – as such – trigger the Trip Delay benefits and/or Trip Cancellation benefits under the policies.

61. Declaratory relief from this Court will resolve the aforementioned controversy and dispute.

**SECOND CLAIM FOR RELIEF**

**BREACH OF CONTRACT**
**(On Behalf of Plaintiff and Members of the Class)**

62. Plaintiff incorporates by reference Paragraphs 1 through 54 hereof, as though the same were set forth in their entirety.

63. The policies are a valid and binding contract, for which Plaintiff and members of the Class paid material consideration in the form of a premium.

64. Pursuant to the terms and conditions of the policies, the forfeited, prepaid, non-refundable, non-refunded, and unused payments are specifically covered thereunder.

65. Defendants have materially breached the policies by failing and refusing to reimburse Plaintiff and members of the Class for any of their forfeited, prepaid, non-refundable, non-refunded, and unused payments. The aforementioned material breaches have damaged, and will continue to damage, Plaintiff and members of the Class.

66. Plaintiff and members of the Class have performed all of their obligations under the policies, and any and all conditions precedent to coverage under the policies for the forfeited, prepaid, non-refundable, non-refunded, and unused payments have been satisfied, waived, or revoked, and/or Defendants are estopped from enforcing them at this time.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of Plaintiff and the Class against Defendants as follows:

a. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

b. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

c. For damages in an amount to be determined by the trier of fact;

d. For an order of restitution and all other forms of equitable monetary relief;

e. Awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

f. Awarding pre- and post-judgment interest on any amounts awarded; and,

g. Awarding such other and further relief as may be just and proper

## **JURY TRIAL DEMAND**

A jury trial is demanded on all claims so triable.

Dated: August 28, 2020

Respectfully submitted,

*/s/ Gary F. Lynch*
Gary F. Lynch (PA ID 56887)
Kelly K. Iverson (PA ID 307175)
Nicholas A. Colella (*Pro Hac Vice forthcoming*)
**CARLSON LYNCH, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
T: (412) 322-9243
F: (412) 231-0246
glynch@carlsonlynch.com
kiverson@carlsonlynch.com
ncolella@carlsonlynch.com

*Counsel for Plaintiffs*